| IN THE MATTER OF THE SEARCH OF THE RESIDENCE, PREMISES, AND CERTAIN VEHICLES ASSOCIATED WITH 2012 MILNE ST. CHATTANOOGA, TN. THE RESIDENCE ASSOCIATED WITH KARLOS BUTLER. | Case No. 1:19-MJ-64<br><br>**Filed Under Seal** |
|---|---|

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

This Affiant, Adam Baldwin, Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, states the following:

### INTRODUCTION AND AGENT BACKGROUND

1. I, Adam Baldwin, am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since August 2014. In addition to my employment with ATF, I have over three years of law enforcement experience with the Pentagon Force Protection Agency (PFPA). During my tenure with PFPA, I served two years as a police officer in multiple capacities, to include patrol, surveillance detection, and as a law enforcement liaison to the Director of PFPA. I additionally served approximately one year as a special agent with PFPA, conducting complex criminal and protective intelligence investigations, as well as conducting domestic and international protective missions. I am a graduate of the Federal Law Enforcement Training Center (FLETC) Uniformed Police Training Program (UPTP), Criminal Investigator Training Program (CITP), and the ATF Special Agent Basic Training (SABT) Program. I have received specialized training with respect to narcotics and firearms violations and have been involved in numerous investigations involving violent crimes and the seizure of firearms and controlled substances. I also have a Bachelor of Science in Criminal Justice from

East Tennessee State University and a Master of Science in Criminal Justice from The University of Tennessee at Chattanooga.

2.  This affidavit is submitted in support of an application for a search and seizure warrant of the residence and premises located at the following location: 2012 Milne St. Chattanooga, TN, the residence known to be associated with Karlos BUTLER (hereinafter BUTLER). Information contained in this affidavit has been obtained through observations by your Affiant, interviews with fellow law enforcement officers, and a Chattanooga Police Department (CPD) Confidential Informant (CI). Not every fact known to your Affiant regarding the case has been included in the affidavit. Your Affiant has only included information and facts needed for the court to make a finding of probable cause.

3.  Based upon your Affiant's training and experience and participation in investigations involving controlled substances, your Affiant knows that when controlled substances are illegally used, manufactured, and trafficked, other supporting items and materials are usually present in addition to the controlled substances themselves. These supporting items commonly associated with the use of and trafficking of controlled substances include, but are not limited to: drug paraphernalia, scales, and packaging materials suitable for particular substance(s), records and notes (including computer and electronically stored) of controlled substance transactions, money (proceeds of or capital for controlled substance(s) transactions), firearms kept for protection, stolen property (often traded for controlled substances), electronic devices suitable for use in controlled substance transactions, recordings of such transactions, or electronic devices suitable for avoiding law enforcement.

4.  It is also common for traffickers of these substances to use electronic communication

devices such as cellular telephones, pagers, both numeric and two-way, and computers so that they can conduct their business at virtually any time without unnecessary delay. Your Affiant knows that these devices are usually found on or in very close proximity to these persons and that such electronic devices are capable of storing information such as phone numbers and/or coded messages which may lead to the identity of codefendants, coconspirators, and/or sources of supply. Cellular phones, phone records, device purchase agreements and other related documents related to the ownership are normally kept at their businesses, and/or places of operation. It is also common for them keep their electronic communication devices and cellular telephones in close proximity to themselves, on their person, in their vehicles, or at their business or place of operation. Cellular telephones, in addition to being communication devices, are also storage devices for data. Data electronically stored inside cellular telephones include telephone numbers of associates, logs of the date and time that individual calls were made, voice and text messages from associates and photographs of the primary user, family members and associates, location information, internet browsing history, calendar entries, task lists, contact information, and other similar data. The data inside cellular telephones is evidence of such sales activity, demonstrates true ownership and control of the telephones, which can be registered to another person, and can be effectively used to corroborate the statements of witnesses. With the advent of "smart phones" all of the documents and information discussed within this section can be held on a smart phone in electronic format as well.

5. Based upon training and experience in conducting investigations involving controlled substances, your Affiant also knows that drug dealers, while utilizing electronic communication devices to conduct their business, will often use "slang," or "code words" when referring to their business activities. These code words may include reference to, but are not limited to, money,

narcotics, other co-conspirators, and certain locations. Drug dealers use these code words in an attempt to conceal their illegal activities from law enforcement in an effort to avoid detection. Your Affiant is also aware that specific slang and code words utilized by those trafficking in controlled substances may be influenced by various factors such as geographical area, cultural influences, and the type of controlled substance being trafficked.

6. In your Affiant's training and experience, users of and traffickers in controlled substances, when hiding or transporting controlled substances or cash, commonly conceal them in several separate "stashes," often in several rooms of a building, outbuilding, vehicles, and in public or common areas which can be kept under their observation. Narcotics traffickers will also often place assets in names other than their own to conceal their assets from law enforcement.

7. Your affiant is aware that narcotics traffickers sometimes utilize multiple "stash locations" in an attempt to keep large quantities of controlled substances separate. Based on your Affiant's training and experience, your Affiant knows this to be done so that law enforcement cannot seize all of the controlled substance at one time if law enforcement is alerted to the location of a single "stash location." This is also done in an attempt to secrete controlled substances from non-law enforcement personnel in an attempt minimize the potential of a robbery by individuals seeking to take possession of controlled substances during armed robberies, home invasions, or routine thefts.

8. It has also been your Affiant's training and experience that those who use or traffic in controlled substances, especially when law enforcement appears, will attempt to physically separate themselves from the controlled substances. They often do this by placing a controlled

substance in a "neutral" location. They often employ intermediaries as couriers and drivers, to store drugs or conduct transactions. These intermediaries often include associates, but may also be extended to women, juveniles, or older people. Traffickers will use these individuals to transport controlled substances or otherwise assist the operation. These "mules" (as they are sometimes called) hold or transport the controlled substances or cash, allowing the dealer to stay "clean." Traffickers will also often "hand off" incriminating evidence to another person if confronted by law enforcement. In sum, these methods are used to attempt to insulate traffickers from risk of detection and apprehension by law enforcement.

9. Based upon your Affiant's training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21 USC §§ 841(a)(1) and 846 have been committed by BUTLER and known and unknown co-conspirators.

## PROBABLE CAUSE

10. Your Affiant is currently participating in an investigation of BUTLER for illegal drug trafficking and the illegal possession of firearms in the Eastern District of Tennessee (EDTN). An investigation conducted by the ATF Chattanooga Field Office and CPD Narcotics Division has identified BUTLER as operating in the EDTN, and being responsible for the illegal possession and distribution of firearms and heroin. The investigation was initiated by the development of information given by other law enforcement officers and a CPD CI. The information provided has been independently corroborated by your Affiant and other agents/officers as accurate. Furthermore, the CI has provided information that has led to the arrest of individuals involved in the illegal distribution of narcotics and illegal possession of

firearms, as well as provided information that your Affiant has independently corroborated as accurate. Therefore, your Affiant submits the CI is reliable.

11. Throughout the course of the investigation into BUTLER, information was developed that identified BUTLER as a source of supply for heroin throughout the EDTN. Specifically, in March 2019, a CPD CI advised your Affiant that a B/M known only to the CI as "Karlos" was actively involved in the distribution of large quantities of heroin throughout the Chattanooga, TN area. The CI continued that "Karlos," whom the CI understood to be a convicted felon, was also known for frequently possessing firearms, to include during narcotics transactions.

12. Based on the information provided by the CI, in March 2019, your Affiant began utilizing the CI to conduct controlled purchases of heroin from "Karlos." To date, the CI has conducted at least three controlled purchases of heroin from "Karlos," who was subsequently identified as BUTLER. During each controlled purchase, BUTLER delivered the heroin in his newer-model Nissan Maxima with VIN 1N4AA6AP1GC432062 and bearing Temporary Tag # D357472. In at least two of the controlled purchases, BUTLER, a convicted felon, was also observed by the CI to be in possession of a firearm. The most recent purchase, which was for a resale amount of heroin from BUTLER, occurred during the past 72 hours in the EDTN. During each of the aforementioned controlled purchases, the following controls were put in place:

   a. Prior to each controlled purchase, under the direction and control of your Affiant, the CI met with your Affiant at a pre-determined location and was physically checked or searched by your Affiant or another law enforcement officer for any type of contraband.

b. The CI was provided with official government funds to purchase narcotics from BUTLER.

c. The CI was outfitted with an audio listening device, which was monitored by your Affiant or another law enforcement officer during each controlled purchase.

d. Law enforcement maintained a constant visual of the CI and his/her vehicle from the pre-buy location to the predetermined buy location for each narcotics purchase.

e. Following each controlled purchase, the CI was surveilled by your Affiant and law enforcement assisting with the operation to a pre-determined location, where law enforcement immediately retrieved narcotics and the audio listening device from the CI.

f. A constant visual of the CI was maintained at all times. The CI was additionally searched or checked for contraband by your Affiant or another law enforcement officer following each controlled purchase.

A summary of the most recent controlled purchase from BUTLER is as follows:

13. On or about April 1, 2019, your Affiant met with the CI at a predetermined location for the purpose of conducting a controlled purchase of heroin from BUTLER. Once at the pre-buy location, the CI advised your Affiant that he/she had spoken with BUTLER earlier that day, at which time BUTLER agreed to sell the CI a specified amount of heroin at a specified price. Based on your Affiant's training and experience, the amount of heroin agreed upon is consistent with a resale amount of narcotics. Following the receipt of information from the CI, the CI, in the

presence of your Affiant, placed a recorded telephone call to BUTLER for the purpose of arranging the drug transaction. During the telephone call, BUTLER and the CI agreed to meet at a predetermined location for the narcotics transaction.

14. Upon departing the pre-buy location, the CI was surveilled by law enforcement to the predetermined buy location, where the CI parked his/her vehicle in the parking lot and remained in his/her vehicle. Shortly before the CI's arrival at the predetermined buy location, law enforcement conducting surveillance in the area of 2012 Milne St. Chattanooga, TN observed BUTLER arrive at 2012 Milne St. Chattanooga, TN in his newer-model Nissan Maxima with VIN 1N4AA6AP1GC432062 and bearing Temporary Tag # D357472, and park on the street in front of the residence. The vehicle was confirmed by your Affiant to be the same vehicle used by BUTLER to deliver heroin during previous controlled purchases during this investigation. Once parked, BUTLER exited his vehicle walked into 2012 Milne St. Chattanooga, TN, then exited several minutes later and immediately returned to his vehicle. Once inside his vehicle, BUTLER departed 2012 Milne St. Chattanooga, TN and was surveilled directly to the predetermined buy location where he parked in an adjacent parking lot. Once BUTLER parked his vehicle, the CI exited his/her vehicle, walked to the Nissan Maxima, and entered the passenger's side of the vehicle. Several seconds later, the CI returned to his/her vehicle and departed the buy location en route to the post-buy location.

15. Once the CI returned to the post-buy location, law enforcement retrieved the previously agreed-upon amount of heroin from the CI. The CI also stated that while conducting the drug deal with BUTLER inside the Nissan Maxima, he/she observed a semi-automatic pistol on BUTLER's lap. The CI also confirmed that BUTLER was the only individual inside the vehicle.

16. In addition to controlled purchases of heroin from BUTLER, database checks confirmed BUTLER to currently be on felony probation in the State of TN. BUTLER's probation officer also confirmed that BUTLER provided 2012 Milne St. Chattanooga, TN as his residence, and has had it listed with TN Probation and Parole as his residence for several months.

17. WHEREFORE, based upon the facts detailed above, together with your Affiant's training and experience in drug trafficking investigations, your Affiant believes and submits there is probable cause to believe that the premises located at 2012 Milne St. Chattanooga, TN, including the residence, outbuilding, vehicle(s), and curtilage located herein described will contain evidence of drug trafficking, particularly of heroin, in violation of Title 21, United States Code, Section 841 and Title 21, United States Code, Section 846. Your Affiant further submits that BULTER's vehicle, the newer-model silver Nissan Maxima with VIN 1N4AA6AP1GC432062 and bearing Temporary Tag # D357472, will also contain evidence of drug trafficking, particularly of heroin, in violation of Title 21, United States Code, Section 841 and Title 21, United States Code, Section 846. These fruits, evidence and instrumentalities of crimes against the United States of America are described with particularity in Attachment B.

FURTHER THIS AFFIANT SAYETH NAUGHT.

_____
Adam Baldwin
Special Agent, ATF

Subscribed and sworn to before me this 3rd day of April, 2019.

_____
Honorable Christopher H. Steger,
UNITED STATES MAGISTRATE JUDGE